1-10-1667 Sherita Cooley v. NB Financial Bank Good morning, Justices, and may it please the Court. Sherita Cooley was injured on June 23, 2008, while she was working as a bank teller at an NB Financial Bank. The circumstances surrounding her fall on that day are as follows. In order to reach an area of the bank where a certain set of keys were stored, she had to descend a set of three stairs. During the course of a given day, and this is the unrebutted testimony at trial, she had to encounter those stairs 15 to 25 times every day. On this particular day, it was the end of her shift. In the process of going down those steps, she fell down and injured her right knee. There is no evidence, and there was no evidence at trial, that this fall was a result of any idiopathic problem that she had. There was no evidence at trial that she simply fell or threw herself down. Is there any evidence as to what caused her to fall? No. She did offer her theory at trial when questioned. She testified at first that she believed that she had gotten her foot stuck in the vent that was underneath the second step. But that's purely speculation and conjecture, right? Correct. I mean, in all lessons, is it a fair characterization of her testimony? She doesn't know what caused her to fall, does she? Correct. Were there any witnesses to this fall? Not at the actual fall. There's a witness who saw her after the fact when she was down on the ground. So are you saying that the act of walking down three steps exposes the employee to a risk greater than that faced by the general public? Is that part of your argument? When the frequency includes encountering those steps 15 to 25 times per day, yes. Why? What's wrong with the steps? There may not be anything wrong with the steps. So if you've got a client who's done a set of stairs 15, 20 times a day, you're exposed to a hazard. What's the hazard? There is no specific hazard. Well, if there's no hazard, how is she exposed to a hazard to a greater degree than the general public? Again, the increased risk is the frequency of having to go up and down those stairs as many times as she did. I'll point to the two cases that we really rely on in our brief. The first case is the LMI consolidated telephone case. In that situation, the employee there was forced to go up to the second floor of her office in order to use the restroom. And the court there found that, yes, the frequency with how she would have to go up there to use the restroom placed her at an increased risk. That employee specifically testified that she had no idea what caused her to fall. She did not know why she fell. She really had no idea. But the mere fact that she had to encounter those steps in order to use the restroom, and we have to assume she probably didn't have to use the restroom more than 15 to 25 times a day, placed her at an increased risk of injury. How does I have difficulty understanding a person going up and down three stairs 15 times a day, that they wouldn't know more about those stairs than the general public? That's an interesting point, Your Honor. But unfortunately, the case law doesn't really delineate between whether somebody has more experience with going down stairs or not. The bottom line is going down stairs is different than walking just up and down the hallway. I think, you know, where the... Who makes that decision as to whether going up and down stairs exposes you to a risk greater than just walking down a hallway? No. Ultimately, it does come, I believe, down to what the commission says is dangerous or not here, but rises to that increased risk. But the problem is the commission here didn't decide it on that basis. If you read the commission's decision, they basically set aside the whole point about the frequency of how she had to encounter these steps. They decided the case on credibility issues, which I think really are collateral to the entire basis of the decision, or what the decision should have been decided on, whether or not she had an increased risk. Well, you know, in hindsight, if they decide a case on credibility, I suggest you have an even greater problem because clearly the law is that the commission is entitled to judge the credibility and believability of the witnesses. If they find in a given case the claimant is not credible, where does that leave you? It leaves me with the mere fact that she still fell. Nobody's saying she didn't fall. Nobody's saying that she didn't have to encounter the steps 15 to 25 times a day. The commission is just saying her version of her theory of what happened doesn't make sense. It's not consistent with what her doctor recorded. That's fine, but she still fell. Following your understanding here, what was the difference between her and the general public? The general public doesn't generally have to encounter steps 15 to 25 times a day. That's the increased risk, and that's what we come down to. Now, if it was a situation like in the Caterpillar case where the employee there just had to go up and down the curb, I think, twice a day, once when he was coming to work, once when he was leaving work, we would concede that, yeah, the commission would be right. But they didn't decide that this way. Here's the problem we're having with the argument. Can you give us a ruling, a bright-line ruling here? So if somebody goes up and down the stairs 15 times a day, that numeric, that 15 times a day, increases the risk that they're exposed to beyond the general public. What about if they went up and down five times a day? If a five-times-a-day person loses, the 15 times wins? That's a very good question, Your Honor. And I would submit that you don't have to decide the case that narrowly to pick out a number. She doesn't know why she fell. It is sort of necessarily tied into some kind of a number, isn't it, then? What else are we going to rule on? She doesn't know why she fell. Well, you're given the number that you have here in this set of circumstances. Now, in another situation, you have a situation where the employee only had to encounter steps five times. In that situation, it may not rise to the level where there's an increased risk. It may not. But in this situation, to say, for the commission to say that going up and down these stairs 15 to 25 times a day is no different than what the general public has to encounter on a daily basis, that's simply not the case. I don't know that. What evidence is there as to what the general public does during the day? Is there any evidence? No. There was no evidence. I'm always amazed by that. I mean, how do we know that? Nobody ever puts in a study what people do or, I guess, judicial notice time or what? Or is it just a finger in the air? Or, you know, I would appeal to common sense, you know, that that's not what people normally have to do, unless their job involves some type of stair climbing. These particular steps were not accessible? No, they were not.  As I understand it, these were steps between the drive-up teller area and the main bank part. Is that right? Correct. And she had to go up and down there to do her job. Yes. So basically your argument is it doesn't matter why she fell. She doesn't have to have an explanation. A person who goes up and down these stairs 15 to 25 times a day, five days a week, eventually may fall. Correct. These are only three steps. Yes. What about walking down the hallway? She's got to walk to her position in the bank. The public doesn't walk to positions in the bank behind the teller's cars. So if she walks down the hallway and falls on her own feet, it's compensable? Well, I guess what you're asking then is to draw an inference that there's no difference between going down steps and walking down the hallway. No. What I'm asking you to do is explain to me why one should find that it's against the manifest way to the evidence when the commission says the petitioner testified she traversed the steps multiple times a day. She didn't provide sufficient evidence to explain the cause of her fall. And I come back to my position. I don't think she has to. I think the fact that it happened. Then it's just positional risk. You want us to adopt positional risk? She fell while she was working, therefore she recovers? No, it's not that simple. Why not? Because of the frequency and how many times she had to go. What was the frequency with which she had to walk down the hallway? Again, I think stairs are different. Who says they're different? Who says they're different? Did the commission say they were different? The commission didn't, but there's the cases that we pointed out to. The two cases are the Nascot Industries case and the Illinois Consolidated Telephone case. You don't distinguish first cash, which is exactly what the commission relied on. First cash, and I don't know why the commission relied on first cash other than because it was a first district case. Because it had nothing to do with stairs. The commission relied on it because if the injured worker does not know the cause of her fall, she can't prove proximate cause. If she can't prove proximate cause, she can't recover. That's why they relied on first cash. And I would counter with first cash has nothing to do with stairs, though. In first cash, the employee there was in a restroom retrieving something for her, I think a container for her lunch. She went to the restroom and was retrieving a container. And she fell down, didn't know why she fell, didn't know if she slipped on anything. But there was nothing involving stairs. And I think that's unique to this case. Stairs are a risk, according to you. When accompanied with frequency. You indicated in your argument that Illinois Consolidated Telephone has a case? Yes. Is that in your brief? Yes. I believe so. Illinois Consolidated Telephone, 314 Elap 3rd, 347. Fifth district case from 2000. Is it in your brief? I know. I think it's in my reply brief. It's in your brief on page 11. Yeah. So other than that, if your honors would like, I will address the issue with the credibility issues that the commission had with my client. Which, again, I think that's an ancillary issue. But I don't concede that there were credibility problems with my client's testimony. She was actually asked to speculate about why she thought she fell. And she tried to do that. And when she ultimately conceded that she didn't know, the commission's coming back and saying, well, she's still got to prove what caused her to fall. If she doesn't know, she doesn't know. So with that, I don't have any other questions. Or I don't have any other arguments to make at this point. Thank you. Counsel, please. Hey, please, the court, counsel, Natalie Romo on behalf of NB Financial. Whether Petitioner sustained an accident that arose out of her employment is a question of fact. The commission decision should be affirmed because it's not against the manifest weight of the evidence. The commission found first that the petitioner sustained an unexplained fall. The commission then found that the accident did not arise out of her employment because she wasn't exposed to a greater risk than general public. Petitioner's brief attempts to argue that this is a question of law rather than fact. And he attempts to argue this by saying that the facts are undisputed. However, at trial, the facts were disputed and there was an issue as to how she fell. Additionally, though, although the facts in a case are undisputed, if they're susceptible to more than one inference, then the manifest weight standard still applies. And that's the case here, and that's the standard that we need to apply. The commission appropriately applied the first cast financial test and the test that's been laid out. She was exposed to a risk. The commission looked at all of the evidence on the record and found that she was exposed to a neutral risk, the unexplained fall. The commission states that in two separate places in their decision. There's ample evidence on the record to support the finding that she had an unexplained fall. They did not find her credible. They did not find all of the different reasons that she gave to be credible. And they relied on that to say, well, she didn't know how she fell, so it's got to be unexplained. They also look at the histories provided to Dr. Frickshank and Dr. Madej. And if you look at the history provided to Dr. Madej, which is the first history she ever provided, she tells him on July 2nd of 2008, does not remember the exact mechanism of injury that fell to the ground. They looked at the histories given. They looked at the fact that she testified first her foot got stuck in the rail. Then they said, no, she said, no, my pant leg may have gotten stuck. So they took all of this information, and then they came to their own inference that this fall is unexplained. Second. I don't think it's disputed that the fall is unexplained. And you're citing the general rule. I think you're opposing counsel saying yes. I recognize that an injury resulting from neutral risk to which the public is equally exposed does not arise out of the employment. He seems to be tacitly conceding that. But he's saying, aha, this is a risk that the public is not equally exposed because of the frequency of going up and down these stairs. So what do you make of his frequency argument? Well, actually, that's the second point that I was going to get into. First, the commission found that it was an unexplained fall. Second, then they looked at it. And we all know that an unexplained fall still requires more than merely showing an inability to explain why the fall occurred. The petitioner must prove that the fall stemmed from an employment-related risk. In terms of having an increased risk, there's nothing different in those stairs than any other stairs. There was no defect. There was no damage to the stairs. They were well lit. They were carpeted. There's nothing, in fact, in the description of those stairs that show that there was a qualitative risk. Now, the petitioner also argues that there was a quantitative risk. However, the commission looked at all of the facts in the evidence and found that there was no quantitative risk. They point out the fact that she had to traverse the steps multiple times a day, but she still did not provide evidence as to what caused her to fall. So despite the fact that she had to go up and down those stairs 15 to 25 times a day, the commission did review that, and they did find that that was not sufficient evidence. And that's why they came to the conclusion that the accident was not compensable. So what we're asking here is that, is the commission decision against the manifest weight of the evidence. Are unexplained falls compensable? If the petitioner can show that there was an increased risk. So they can be? They can be, absolutely. We're not disputing that at all. So why are they saying, well, she didn't explain her fall? I mean, you just quoted her. Well, I think what they're saying here in the sentence is that she didn't explain anything else that caused her to fall. There was no quantitative damage. There was no qualitative damage. There wasn't anything else that she said. She wasn't carrying anything. She wasn't. Didn't she testify how frequently she traversed those stairs? She did. She said that she went up and down them about 15 to 25 times a day. That is quantitative. But the commission has disregarded that and said that we don't believe that. And that's what they're saying when they point out the fact that. They said they don't believe that she traversed the stairs 15 times. No, no, they do agree that. I'm sorry. They're saying the commission finds while petitioner testified she traversed the steps multiple times a day, she didn't provide sufficient evidence explaining the cause of her fall. To me, that. That's kind of an interesting statement. So, therefore, she didn't say why she fell, which is an unexplained fall, right? Correct. And it is compensable. No, I don't believe that. That's what they're saying. I think what they're saying by this sentence. I didn't say they were saying that, but we know an unexplained fall is compensable. I don't understand their statement at all. Well. It's kind of like, oh, you didn't explain it. What I'm taking by their inference is to say that not only was there not a quantitative risk by dismissing it, by stating it, they're also saying that there was not a qualitative risk because there wasn't anything else in the condition of the stairs. No, there's no qualitative risk. But who has to come to the conclusion that something exposes one to an unreasonable risk above that of the general public because of the number of times it's encountered? Your Honor, I believe that that would be the commission. So if the commission says it's an unexplained fall, but you didn't give us any reason on why, isn't that tantamount to saying you didn't establish that the number of times that they alighted the stairs exposed them to a risk greater than the general public in her opinion? Yes, absolutely. And whose opinion is it that counts? Well, if the commission's opinion is not against the manifest weight, then it should be affirmed. So in conclusion and in closing, I just wanted to point out that Petitioner does cite all of the cases, but all of the cases in his brief do relate to the manifest weight standard. And all of the facts, you know, they might be different. They might be related to these facts. But the commission and this court looked at all of the evidence, and in the cases Petitioner cited, this court has looked at whether that decision was against the manifest weight of the evidence. Okay, I have a question. What if the evidence was 100 times different? Well, I think that that would be up for the commission to decide, whether that would be any different than what the general public traverses. And I think the commission looked at the number of times, and they decided that it didn't rise to the risk. But let's say it's 100 times. I mean, is it possible that the opposite conclusion would clearly be apparent? It's possible, but I think it would depend upon the stairs, the type of employment. I mean, look at people that live in apartment buildings, live in houses with stairs. A hundred times a day, even if they live in an apartment building? I don't know. Yeah, I live on the fourth floor, so I'm not sure. I would still think that it would be up to the commission to make that determination and take all of the facts that were presented at trial and then come to that decision. So one could argue it's a failure of proof by the claimant? Yes. So in conclusion, the commission decision should be affirmed. Do you have any other questions? Thank you, Counsel. Mr. Votel? I'll actually just wait for any other questions. Did the court affirm the commission's decision? Correct. Which I agree is a little different here because I'm asking you to reverse what the commission found. However, the commission really did not factually decide the case on the 15 to 25 times up and down the stairs. They decided the case, the bulk of their opinion or decision deals primarily with the credibility issues. And I would have no question. What they talked about was she failed to explain why she fell. Correct. She didn't give a credible explanation for why she fell. Correct. I think, as Justice Holder should question, isn't that a failure of proof? No. She failed to introduce evidence that climbing up stairs, these three stairs, 25 times a day, exposes one to a risk greater than the average citizen exposed to it. I mean, how many times does the average citizen climb stairs, walk over curbs? That's certainly evidence that, in hindsight, may have been helpful to the commission. But I don't think, in looking at their decision, that's what they decided it on. No, but we can affirm based on any grounds evident from the record. So where did she establish that climbing these stairs 15 to 25 times a day exposed her to a risk greater than the general public? You say because they're stairs. Again, I'm stuck with my prior statement, which is... You're stuck with the evidence. Right. But I do think that there's certain things that the commission, that you in reviewing the commission's decision, can fall back on common sense. And I think, you know, what Your Honor was saying earlier about 100 times a day, 200 times a day. I mean, clearly there's a certain point where we reach where we know, from a common sense standpoint, that's beyond what people deal with in a regular day. And yet that was probably for the commission to make that decision, right? If they did it correctly and if they used that as their basis for the decision. Thank you. Thank you. The court will take the matter under advisory for this position.